**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| E-CONTACT TECHNOLOGIES LLC<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC., ET AL.<br><br>    Defendants. | CIVIL ACTION NO. 1:11-CV-426<br><br>**JURY TRIAL DEMANDED** |

**SUR-REPLY IN OPPOSITION TO SAMSUNG'S MOTION TO DISQUALIFY**

I. **E-CONTACT HAS NOT CONCEDED THAT THERE IS A CONFLICT**

Samsung's reply begins by asserting that E-Contact has admitted that a conflict exists. According to Samsung, E-Contact "does not dispute, and in fact concedes, the factual showing that Antonelli and Thompson's former representations of Samsung are substantially related to this case . . . ." Reply at 1. And according to Samsung, E-Contact also concedes that Mr. Antonelli and Mr. Thompson "received confidential information that would prejudice Samsung in this case." *Id*.

E-Contact does not agree that there is a conflict and obviously did not file an opposition saying that a conflict exists. Samsung has no support for these inaccurate characterizations. For example, Samsung argues that E-Contact admitted that *InterDigital* and this case are substantially related because they involve common technology. Reply at 1. In support of this assertion, Samsung quotes E-Contact's opposition brief as follows: "Opp. at 6 ('. . . both matters generally involved "mobile communication devices."')." *Id*. This quotation is taken completely out of context. E-Contact actually said exactly the opposite in its opposition brief: "*Nor is this matter substantially related* to *InterDigital* merely because both matters generally involved 'mobile communication devices.'" Opp. at 7 (emphasis added).[1]

II. **NOT ALL PATENT CASES ARE SUBSTANTIALLY RELATED**

Despite clear case law against it, Samsung persists in its argument that *InterDigital* and *Rambus* are substantially related to this matter simply because they are patent cases.[2] For example, Samsung continues to argue that the matters are related because they involve legal issues that are common to all patent cases, such as infringement, invalidity, and unenforceability.

---

[1] Samsung cited the wrong page. The quote was taken from page 7 of the opposition brief, not page 6.

[2] During meet and confer, Samsung admitted that its position is that AHT cannot represent a client adverse to it *in any patent case*. *See* Ex. 1 [1/20/12 Email].

*See, e.g.,* Reply at 1-2.  Similarly, Samsung continues to argue that disqualification is warranted because Mr. Antonelli and Mr. Thompson were supposedly exposed to Samsung's general patent litigation strategies by working on the past matters.  *See, e.g.,* Reply at 3 ("Antonelli received Samsung's litigation policies . . . .").

These are the type of arguments that can be made whenever a former case and a current case both involve patents. For example, in *Biax* the party seeking disqualification made the following arguments, which are virtually identical to Samsung's arguments here:

- "WM&A will be able to anticipate how Sun will approach the litigation, analysis, and settlement."  Ex. 2 at 2  [Biax Brief].

- "WM&A attorneys . . . were exposed to the structure of Sun's various engineering groups, the type of documents created and maintained by Sun's engineers, and the identity of the leading engineers in particular areas of technology."  *Id*. at 3.

- "During the prior representation, WM&A counsel were not only privy to Sun legal strategy for responding to a charge of infringement brought by such a company—WM&A helped to develop that strategy."  *Id*. at 9.

- "[I]n the prior representation, WM&A counsel worked closely with Sun engineers in developing a response to the charge that Sun's servers infringed the patent. . . . WM&A could have learned which Sun engineers to depose in this case and the technical background of those engineers."  *Id*. at 10.

- "WM&A's prior representation concerning a charge of patent infringement exposed WM&A to Sun's confidential legal strategies. . . . Insight into those legal strategies . . . will help WM&A represent BIAX in this case."  *Id*. at 13.

The claim that attorneys should be disqualified because they were generally exposed to litigation strategies has been repeatedly rejected by the Court.  *See Biax Corp. v. Fujitsu Computer Sys.*, No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 35770, *6 (E.D. Tex. May 16, 2007) (denying motion to disqualify); *see also Power MOSFET Techs., L.L.C. v. Siemens AG*, No. 2:99-cv-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. Sept. 30, 2002) (same).

Samsung does not even attempt to distinguish *Biax* or *Power Mosfet*, despite the fact that E-Contact has cited them to Samsung from the beginning. *See* Opp. Ex. 6 [11/28/11 Letter]. Samsung cites *Power Mosfet* only for general statements of the law. Opening Brief at 8; Reply at 5. And Samsung does not cite *Biax* at all. Given that there was no substantial relationship in *Power Mosfet* and *Biax*, there is no good argument that *Rambus* and *InterDigital* are substantially related to this case.

### III. SAMSUNG POINTS TO NOTHING SPECIFIC THAT WARRANTS DISQUALIFICATION

The only things that Samsung points to with any specificity do not warrant the drastic step of disqualifying E-Contact's chosen counsel. With respect to Mr. Thompson, the only specific thing that Samsung can say is that he received financial information and patent license agreements about old products that are like the accused products in this case simply because they are also "mobile communication devices." *See* Reply at 2. But because the information Mr. Thompson received was about old products, it is completely useless in this case—even if Mr. Thompson could somehow remember it four years later. *See Biax,* 2007 U.S. Dist. LEXIS 35770 at *6-7 (rejecting argument that counsel should be disqualified because the former matter involved the "SPARC I, II, and III architectures," which were the foundation for the "SPARC IV and TI architectures" at issue in the current matter).

With respect to Mr. Antonelli, the only thing specific Samsung can say is that he received confidential document retention policies. *See* Reply at 2. But Samsung still has failed to explain how this can possibly give E-Contact an advantage in this case (even if Mr. Antonelli could somehow remember them years later). Instead Samsung argues, in conclusory fashion, that they will somehow provide general insight into how "Samsung handles discovery and disputes that may arise over document production." Reply at 3. But nothing about document retention

3

policies (which are adopted for general business purposes, and not the purpose of any particular litigation) would provide any insight into any litigation strategies, nor has Samsung provided any reason to think that they would.  And even if old document retention policies were relevant to this case (which they are not), they would have to be produced.

**IV.     E-CONTACT IS NOT ARGUING THAT JUNIOR ATTORNEYS DO NOT HAVE ETHICAL DUTIES**

In its opposition, E-Contact explained that Mr. Antonelli and Mr. Thompson were not the lead attorneys working on the Samsung matters at the Weil firm, and that any high level discussions about litigation or settlement strategy would have been handled by more senior attorneys, including the national practice leaders at Weil.  *See* Opp. at 9-10.  In its reply brief, Samsung responds by arguing that "these excuses" do not matter, and that they defy "common sense," because "[t]here is no legal authority for the proposition that disqualification should be reserved for the most senior attorneys . . . ."  Reply Brief at 3-4.

Samsung's reply misses the point.  No one is arguing that Mr. Antonelli and Mr. Thompson do not have ethical duties, or that they are excused from complying with their ethical duties, because their work on the former Samsung matters at the Weil firm was directed by more senior attorneys.  The point is that Samsung's repeated assertions that Mr. Antonelli and Mr. Thompson were privy to high-level litigation and settlement strategies are inconsistent with the actual role that they played on Samsung matters while at Weil.   Mr. Antonelli and Mr. Thompson submitted declarations unequivocally confirming the statements in E-Contact's opposition brief that they did not receive any such confidential information.  Samsung has not pointed to any evidence to the contrary.  Samsung cannot do so because Mr. Antonelli and Mr. Thompson's roles on the former Samsung matters did not involve that type of contact with Samsung.

V. **THE DUTY OF LOYALTY HAS NOT BEEN VIOLATED**

Samsung argues that E-Contact "egregious[ly]" ignores its argument that AHT has violated the duty of loyalty. Reply at 5. But no separate response to that argument was necessary, since Samsung argued that the duty to loyalty was violated only because AHT supposedly engaged in a conflict of interest. *See, e.g.*, Ex. 4 at 9 [*Secure Axcess, LLC v. Dell, Inc.*, Case No. 6:11-cv-338 (E.D. Tex. Feb. 23, 2012)] (rejecting the argument that the duty of loyalty was violated where there was no conflict of interest in taking on the new matter).

VI. **AHT TAKES SAMSUNG'S ALLEGATIONS SERIOUSLY**

Samsung concludes its reply by arguing that plaintiff "does not consider violations of ethical duties a serious matter." Samsung Reply at 5. Not so. From the first day that Samsung raised a conflict issue, AHT has taken it seriously, immediately investigating it, explaining to Samsung why there is no conflict, asking Samsung to provide further information about the alleged conflict, citing applicable law to Samsung, and attempting to explore with Samsung whether there was any way to resolve the issue. *See, e.g.*, Opp. Ex. 6 [11/28/11 Letter]; Ex. 1 [1/20/12 Email]. In response, Samsung refused to provide most of the information that AHT requested,[3] and made clear that it intends to challenge AHT's representation of any client adverse to Samsung in any patent case, no matter what is actually at issue in the case. *See, e.g.*, Ex. 1 [1/20/11 Email]. Indeed, just days ago, Samsung filed another disqualification motion in a case involving a completely different technology. *See* Case No. 1:11-cv-451, Dkt. No. 156.

VII. **CONCLUSION**

For the foregoing reasons, the Court should deny Samsung's motion for disqualification.

---

[3] For example, AHT has repeatedly asked Samsung to provide the engagement letters between the Weil firm and Samsung. Samsung's counsel obtained those letters from the Weil firm, but refuses to share them with AHT. *See, e.g.*, Ex. 2 [2/23/12 Email].

Dated: February 23, 2012

Respectfully submitted,

| | |
|---|---|
| _____ | _____ |
| Matthew J. Antonelli | Larry D. Thompson, Jr. |
| Texas Bar No. 24068432 | Texas Bar No. 24051428 |
| matt@ahtlawfirm.com | larry@ahtlawfirm.com |
| Antonelli, Harrington & Thompson LLP | Antonelli, Harrington & Thompson LLP |
| 4200 Montrose Blvd., Ste. 430 | 4200 Montrose Blvd., Ste. 430 |
| Houston, TX 77006 | Houston, TX 77006 |
| (713) 581-3000 | (713) 581-3000 |
| (713) 581-3020 (fax) | (713) 581-3020 (fax) |

Attorneys for Plaintiff E-Contact Technologies LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on the 23rd day of February 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        /s/ Matthew J. Antonelli
                                        Matthew Antonelli